STATE OF MAINE FILE

STATE OF MAINE
LINCOLN, SS.

*LHC*

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-006
*EAG — LIN — 10/26/2000*

DONALD L. GARBRECHT
LAW LIBRARY

OCT 30 2000

KEITH E. PLUMMER,
    Plaintiff,

v.

TOWN OF EDGECOMB,
    Defendant.

ORDER

On February 6, 1998, Keith Plummer ("Plummer") filed a complaint seeking declaratory relief against the Town of Edgecomb ("Town") concerning the status of a portion of the Old County Road.[1] In 1992 Mr. Plummer purchased a large piece of property that abuts that portion of the Old County Road located between Paine's Corner and the intersection with the Mount Hunger Roads. The land he purchased was directly east and south of over 700 acres of undeveloped land known as the Schmid Preserve. Sometime after 1992, Mr. Plummer sold three parcels from the original piece. However, he still owns - either in his name or in the name of his wife - two parcels on either side of the Old County Road. Those parcels, identified as numbers 83.01 and 84 on the Town tax map, are currently accessible only by the Old County Road. The Town has identified the Old County Road east of the Town

---

[1] Although defendant's trial brief states that "there is an initial issue as to whether the road section in question is part of any road formally laid out and accepted by the Town," no such issue was presented at trial.

turnaround at Paine's Corner as abandoned, and has refused to perform any maintenance or improvements on it. Mr. Plummer brought this action in an effortto have the court determine the road's legal status.

The parties appeared in court on October 23, 2000 to present their evidence through witnesses and exhibits, and to argue their interpretations of that evidence.

## DISCUSSION

### A. Presumption of Abandonment

In deciding the question posed by Mr. Plummer, the court must first determine whether the Town has established *prima facie* evidence of abandonment. *Earwood v. Town of York*, 1999 ME 3, 722 A.2d 865 (Me. 1999). Here, the Town presented evidence that, for at least the thirty years preceding February 6, 1998, it did not maintain or improve the Old Country Road beyond the turnaround at Paine's Corner. The "demise" of what was apparently once an active thruway between the east and west portions of the town was explained by Robert Brown, an original and current member of the Schmid Preserve Committee. Mr. Brown testified that, at one time, the Old Country Road and the Mount Hunger Road were collectively known as the Upper Cross Road. In 1927, a large fire devastated much of the forest surrounding the road, and destroyed all of the buildings along it. Thereafter, persons traveling from one side of town to the other bypassed the Upper Cross Road in favor of the Lower Cross Road (now known as the McKay Road.) As the traffic on the Upper Cross Road decreased, the Town decided not to maintain it, and spent its

limited resources on maintaining and improving the Lower Cross Road.

The Town's decision to abandon the former corridor between the east and west portions of town can be demonstrated as early as 1981. At the Selectman's meeting on October 21, 1981, a resident of what is now known as the Mount Hunger Road North requested that the road be repaired as far as his residence. The notes for that meeting include the following statement: "Since the road has not been used in many years 30 or more the town is not sure this has to be done." While that particular entry did not refer directly to the road now in dispute, it does lend general support to the Town's position.

The question, however, is not what the Selectmen intended, but what was done:

It is prima facie evidence that a town or county way not kept passable for the use of motor vehicles at the expense of the municipality or county for a period of 30 or more consecutive years has been discontinued by abandonment. A presumption of abandonment may be rebutted by evidence that manifests a clear intent by the municipality or county and the public to consider or use the way as if it were a public way. A proceeding to discontinue a town or county way may not prevent or estop a municipality from asserting a presumption of abandonment.. A municipality or its officials are not liable for nonperformance of a legal duty with respect to such ways if there has been a good faith reliance on a presumption of abandonment. Any person affected by a presumption of abandonment, including the State or municipality, may seek declaratory relief to finally resolve the status of such ways. A way that has been abandoned under this section is relegated to the same status as it would have had after a discontinuance pursuant to section 3026, except that this status is at all times subject to an affirmative vote of the legislative body of the municipality within which the way lies making that way an easement for recreational use. A presumption of abandonment is not rebutted by evidence that shows isolated acts of maintenance, unless other evidence exists that shows a clear intent by the municipality or county to consider or use the way as if it were a public way.

23 M.R.S.A. § 3028.

Mr. Plummer has argued that, on at least three occasions during the thirty-year period preceding the filing of this action, the Town paid for work done on the disputed section. The earliest work occurred in either 1970 or 1971. At that time, Malcolm Giles graded the road once at the request of the former Road Commissioner, Charlie Roberts. Mr. Giles testified that the grading was not done at the behest of the Selectmen, but was done to appease what was then a privately-operated Fire Company. At about the same time, Mr. Giles installed culverts to prevent the road from washing out just beyond what is now known as the Town turnaround.[2] Again, Mr. Giles asserted that the work was done only to allow firefighting equipment to have access to the land that was eventually known as the Schmid Preserve[34]. He testified that the Selectmen were concerned that doing any

---

[2] The second page of joint exhibit 25 is the 1979 report from then-Road Commissioner Jack L. Tenney. In that report he noted that: "Several culverts were replaced, Old County, Mt. Hunger and the Shore Road. . . . The Mt. Hunger Road from the River Road to the Old County Road is now passable for four wheel drive vehicles due to extensive clearing and brush cutting. Additional work is till required on this road." Mr. Giles was unable to recall where the culvert work on the Old Country Road had occurred, but he was certain that no work had been done on the disputed portion since 1970 or 1971.

[3] Before 1979, much of the land in this general area was owned by Charles and Constance Schmid. On July 12, 1979, they signed a Declaration of Intent,

work on the road would improve access to the Schmid woods, and access was something they wanted to limit. They believed public access would lead to vandalism, fire, or other damage to the property. For safety purposes, the Fire Company wanted access to a large, undeveloped area of land that had previously been the site of a large fire.

The third episode of maintenance or repair occurred in 1992. During the spring of that year, the Fire Department arranged to have the Maine National Guard construct a new parking lot at its headquarters on Route 27. While the work was progressing, the Guard members camped in the Schmid Preserve. At the end of their stay, the Guard also replaced a culvert on the disputed section of road. It is not clear whether this work was done to "repair" damage done by the Guard's heavy equipment, or whether this was done at the behest of the Fire Department in another attempt to improve its access to the land along the Old County Road. In any event, the cost of the materials used in that repair was paid for by the Schmid Preserve Committee.

Because no Town funds were spent on the repairs done by the Maine

essentially offering the land to the Town as a nature preserve. Their offer was accepted by the Town during its general meeting in March 1980. In May 1980, the Town voted to create the Charles O. Schmid Preserve Fund and, in March 2000, it adopted the Management Plan for the Preserve.

National Guard, the court finds that the 1992 repairs were not done at "the expense of the municipality . . . ." That work, therefore, does not act as an impediment to the Town's assertion that the road is abandoned.

That leaves the work done in 1970 or 1971 by the Town's road crew. The Town argued that, although the work was done at its expense, it should not be deemed work done to keep the way "passable for the use of motor vehicles." While it acknowledged that the work was done to allow access for "vehicles," the Town argued that its only concern was access for firefighting vehicles. Public safety, rather than access for general motor traffic, was the motivation behind this work.

In *Town of South Berwick v. White*, 412 A.2d 1225 (Me. 1980 ) the referee who heard the case held that, in order for the Town to establish a prima facie case of abandonment, it would have to establish that **no** municipal funds could be expended to keep the road passable during the thirty-year period. The Law Court did not specifically adopt that holding by the trial court, but it did hold that "passable" was a relatively low standard:

> Although section 3028 undoubtedly refers to more than *de minimis* "public expense," we emphatically reject the notion that the public could lose its rights to continuation of a public way by a town's defaulting on its obligation to maintain a road to a full "safe and convenient standard." By its plain terms section 3028 prevents the presumption of abandonment from arising if the town way is kept at public expense at least "passable for the use of motor vehicles," whether or not it also meets the higher test of being "safe and convenient for travelers with motor vehicles."

*Id.*, at 1227.

Plummer has used the photographs admitted by agreement to demonstrate

that the road is "passable." However, passability is not really the issue. The issue is whether the Town expended its funds to make or keep it that way.

In *Earwood v. Town of York, supra,* the Law Court held that the grading of a road two or three times per year between 1960 and 1977, when added to a one-time application of gravel, should have precluded the trial court from finding that the Town had not expended funds to keep the road passable for thirty consecutive years. *Id.,* at 868. If it is possible to determine a mathematical formula from that decision, then perhaps thirty-six to fifty-two episodes of maintenance are more than a *de minimis* expense. However, no mathematical formula exists, and the court must consider not only the expense of the work done, but also its purpose. In *Earwood, supra,* the work was done to keep the road passable for regular, seasonal traffic. The same observation does not fit the facts of this case.

Based upon the evidence submitted, the court finds that the expenditures made in 1970 or 1971 were *de minimis* efforts to keep the road open for emergency vehicles; there was no work done to make the road "passable for the use of motor vehicles." The Town has presented a *prima facie* case of abandonment.

B. Plaintiff's Rebuttal

The "isolated acts of maintenance" listed above could rebut the presumption of abandonment if the evidence showed a clear intent by the municipality or the public to consider or use the way as if it were a public way. The evidence, however, does not show such intent. All of the evidence from defendant's witnesses, as well

as the minutes of the Selectmen's Meetings demonstrates exactly the opposite. The municipality clearly intended to abandon this road, and was careful to ensure that there were no missteps.

Although the Old County Road did historically provide access to the Schmid Preserve, the long-term plan adopted this spring calls for an end to almost all vehicular traffic. That plan, adopted by the residents at the Town Meeting, recognized the abandoned status of the roads that had, in the past, provided vehicular access. Its recommendation for the future called for the construction of a parking area near the Town turnaround on the Old County Road. At least in their adoption of this Plan, the Town and its residents did not foresee any further vehicular use of the disputed portion of the Old County Road.

While the photographs presented by the plaintiff do demonstrate that at least some members of the public make drive their vehicles along the disputed area and into the Preserve, that isolated use is not sufficient to demonstrate any intent by the municipality or by the public to consider or use the disputed section of the Old County Road as a public way. The plaintiff has failed to rebut the presumption of abandonment.

C. Conclusion

After review of all of the evidence, and after consideration of the arguments, the court is convinced that the Town of Edgecomb abandoned the Old County Road east of the Town turnaround at Paine's Corner.

# ORDER

Based upon the evidence presented, the court finds that the portion of the Old County Road between lots 83 and 84, Map R-2 of the Town of Edgecomb's tax maps is determined to be abandoned.

The Clerk is directed to incorporate this order by reference in the docket for this case.

Dated: October 26, 2000

_____
Justice, Maine Superior Court

Pltff: (622-3693)
Clifford H. Goodall, Esquire

Def: (882-9446)
Eliot Field, Esquire